UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KIMBERLY A. RICE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 4:16-CV-1797-RLW |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| ACTING COMMISSIONER OF SOCIAL | ) |  |
| SECURITY, | ) |  |
|  | ) |  |
| Defendant.[1] | ) |  |
|  | ) |  |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Kimberly Rice ("Rice") for disability insurance benefits.

**I.    Background**

Beginning on August 9, 2010, Rice was found disabled due to a disorder of the neck and lumbar spine, and right hip pain. After a continuing disability review, it was determined that Rice was no longer disabled as of October 15, 2014. After October 15, 2014, Rice alleged that she was disabled due to fibromyalgia and mental impairments. She alleged extreme limitations in her ability to sit, walk, lift and dress herself. This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. (Tr. 83, 85). Rice filed a written request for a hearing before an Administrative Law Judge ("ALJ"). The

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

SSA granted Rice's request and a hearing was held on June 15, 2015. The ALJ issued a written decision on August 24, 2015, upholding the denial of benefits. (Tr. 10-25). Rice filed a timely Request for Review of Hearing Decision with the Appeals Council. (Tr. 8). The Appeals Council denied Rice's Request for Review on October 3, 2016. (Tr. 1-3). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Rice filed this appeal on November 20, 2016. (ECF No. 1). Rice filed a Brief in Support of her Complaint on May 1, 2017. (ECF No. 17). The Commissioner filed a Brief in Support of the Answer on July 28, 2017. (ECF No. 24).

## II.     Decision of the ALJ

The most recent favorable medical decision finding that Rice was disabled was the determination dated December 18, 2010, which is the comparison point decision (CPD). At the time of the CPD, Rice suffered from the following medically determinable impairments: a disorder of the neck and lumbar spine, and a right hip pain. As of October 15, 2014, Rice's disability ended. Since October 15, 2014, the ALJ found that Rice had the following severe impairments: a disorder of the neck and lumbar spine, and right hip pain. (Tr. 15). The ALJ, however, determined that Rice did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15). The ALJ found that Rice medically improved as of October 15, 2014 because her comparison point decision (CPD) impairments no longer met or medically equaled the same listings that were met at the time of the CPD. The ALJ found that Rice had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, stoop, kneel and crouch; she should never climb ladders, ropes or scaffolds or crawl; she can have only occasional exposure to

extremes of cold as well as vibration. (Tr. 19). The ALJ found that Rice was capable of simple, routine tasks in an environment where there are only occasional work place changes and where there is only occasional contact with supervisors, co-workers or the general public. (Tr. 19). The ALJ found that Rice was unable to perform past relevant work. (Tr. 23). However, the ALJ found that, beginning October 15, 2014, considering Rice's age, education, work experience, and RFC, Rice has been able to perform a significant number of jobs in the national economy. (Tr. 24). In sum, the ALJ determined that Rice's disability ended on October 15, 2014 and she has not become disabled again since that date. (Tr. 24).

## III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Hearing Testimony

Rice testified on June 15, 2015, as follows:

Rice was forty-two years old. (Tr. 39). She received her bachelors of science degree in 2004. (Tr. 39-40). She last worked in 2010 as a program facilitator for Redevelopment Opportunities for Women, called Olive Branch, which was a home for pregnant and parenting teenagers. (Tr. 40-41, 43). She worked there for around four or five years. (Tr. 43). She was required to have a degree in social work to get that position. (Tr. 41). About three-fourths of her day was spent standing. (Tr. 41-42). When she was working at the childcare center, she was required to stoop and also to lift children. (Tr. 42). She would also carry class materials, which were around 20 pounds. (Tr. 42-43).

She worked at Guardian Angel Settlement as a social worker for men who were working to be better fathers. (Tr. 43-44). She worked there for six (6) years. At that position, she was required to lift children and file boxes. (Tr. 45). She was also the social services coordinator for

3

more than a year and the director of social services for more than a year. (Tr. 45, 47-48). She stopped being able to perform her position because her eyes were watering, she had pain in her back, and other symptoms of fibromyalgia. (Tr. 46). She was teaching classes, writing grants, and doing assessments as director of social services.

She takes ibuprofen and methotrexate for her fibromyalgia. (Tr. 49). She takes an injection of 25 milligrams of methotrexate every week. (Tr. 50). She takes Prednisone every day and Seroquel at night. (Tr. 50). Seroquel is prescribed by Ms. Fisher, who is a "psychiatric nurse." (Tr. 51).

She takes Omeprazole for her stomach issues. (Tr. 51). She takes Victaulic for high blood pressure. (Tr. 51). She takes Restasis for dry eyes. She had a corneal implant in August 2009. (Tr. 51-52). She sees an ophthalmologist every six months. (Tr. 52). The Restasis helps with the dryness in the right eye, but not in the left eye. (Tr. 52).

Dr. Guerrino is her rheumatologist. (Tr. 52). She sees him every six months. Dr. Brady Spielberg is a psychologist and Rice's therapist. Rice has been seeing Dr. Spielberg for a year. (Tr. 53). She sees Dr. Spielberg every two to three weeks. Before seeing Dr. Spielberg, Rice saw Dr. Rasa at Hope Wheel. (Tr. 53). Dr. Rasa was her psychiatrist and Williams Randall was her therapist. (Tr. 53).

Rice was diagnosed with fibromyalgia in 2010. She was married on March 25, 2015. (Tr. 53). Her husband's 23 year old son lives with them. (Tr. 53). Rice's son is 19 and he lives with her. (Tr. 54). Her son works. (Tr. 54). Her husband does not work. (Tr. 54). Her husband was denied disability. They live in a house. (Tr. 54).

Rice no longer takes care of her mother. (Tr. 54). It took a while to get the proper people in place to care for her mother. Her mother has Alzheimer's. (Tr. 54). When she was caring for

4

her mother, she would cook for her mother, turn off the stove, and take her mother to her doctor appointments. (Tr. 61).

On a normal day, Rice gets up between 6:00-7:00 a.m. and lets out their two dogs. (Tr. 55). Depending upon whether her skin is bothering her, Rice may take a shower. Robert, the older boy, feeds the dogs. (Tr. 56). She dresses, depending upon how her skin is feeling. (Tr. 56). Her husband does the laundry. (Tr. 56). She and her husband do the shopping together. (Tr. 57). She cannot carry a gallon of milk so they have switched to half-gallons of milk. (Tr. 57).

She has a driver's license. (Tr. 57). She sometimes drives but mostly is the passenger. She does not watch the television because the light hurts her eyes. She uses the computer only to communicate with her doctors and pay bills. She communicates with her children by means of phone, text, and notes. (Tr. 58).

Rice does not go anywhere regularly. (Tr. 59). She stopped going to church because there are too many people at church who want to touch or talk to her. (Tr. 59). Sometimes she walks for exercise at the mall. (Tr. 60). She has to stop three or four times before she finishes her mile. (Tr. 61). She cannot walk more than one mile. (Tr. 62-63).

Her fibromyalgia pain is between her shoulder blades and the middle and bottom of her back. (Tr. 64). She also has spasms in her forearms, hands, and thighs. She has pain all of the time. Stress and activity make her pain worse. Lying down can make her pain better or worse. She uses Icy Hot and takes ibuprofen for her muscle spasms. Sitting in the shower and changing positions also helps. She has problems with fatigue daily such that she must lie down from two to four hours per day. (Tr. 65). She has trouble concentrating and focusing. (Tr. 65). She tries going to the grocery store very early or very late to avoid crowds. (Tr. 65-66). Stress is

completely debilitating for her. (Tr. 66). She has crying spells every day. (Tr. 66). Some days she forgets to take her medicine and eat. (Tr. 67).

She has difficulty with her vision, particularly with the light. (Tr. 67). Sunlight causes burning, stinging, and watering.

She cannot finish household chores or tasks without taking rest breaks. (Tr. 67-68). It takes her the whole month to clean the house. (Tr. 68). She cannot make it through the day without lying down. (Tr. 68). Her tiredness has increased in the last year. (Tr. 68). She can only sit for 30 minutes before she needs to get up and move around. (Tr. 69).

Rice is five feet, four inches and weighs 230 pounds. (Tr. 70).

Dr. Spielberg spends an hour with Rice; Ms. Fisher, the nurse practitioner spends fifteen minutes with her. (Tr. 70).

Dolores Gonsales, the vocational expert, testified:

Gonsales was instructed to assume a hypothetical person of Rice's age, education, and past work experience who is capable of work at the light exertional level. (Tr. 74-75). She also would be able to occasionally climb ramps and stairs, stoop, kneel, and crouch. She should never climb ladders, ropes, or scaffolds, nor crawl. She could have only occasional exposure to extremes of cold, as well as vibration. She should have no exposure to hazards such as unprotected heights and dangerous machinery. Ms. Gonsales said that this hypothetical person could perform Rice's past work as a Director of Social Services and Social Services Coordinator. (Tr. 74-75).

The second hypothetical person has the same characteristics as the first hypothetical, but is only capable of performing simple, routine tasks in an environment where there are only occasional workplace changes and where contact with supervisors, coworkers, and the general

6

public would be occasional. Ms. Gonsales said that Rice's past work would be precluded based upon these additional restrictions. (Tr. 75). However, work as a routing clerk, marker II, and collator operator would be possible for hypothetical person number two.

The third hypothetical person would be the same as the person in the second hypothetical, but the third person would only be able to perform at the sedentary exertional level. (Tr. 76). Ms. Gonsales said that jobs are available for such a person including: an addresser, a document preparer, and a press clippings cutting and paster. (Tr. 76).

A fourth hypothetical person would but subject to prior limitations, but would need at least two additional unscheduled breaks, which would exceed 15 minutes each and would be in addition to the normal breaks. Ms. Gonsales stated that there would be no work in the national economy for such a hypothetical person. (Tr. 77).

The last hypothetical person would have moderate limitation in her ability to maintain a work schedule and be consistently punctual, to maintain adequate attention, concentration and focus on the work duties through a typical work day. (Tr. 78). Ms. Gonsales stated that such a person would not be able to work competitively. (Tr. 79).

### B. Medical Evaluations

On October 27, 2014, Dr. Kevin Threlkeld conducted a Physical Residual Functional Capacity Assessment. (Tr. 585-91). Dr. Threlkeld found that Rice could occasionally lift and/or carry 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, and was unlimited in her ability to push and/or pull. Dr. Threlkeld determined that Rice could occasionally climb ramps and stairs, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and frequently balance. On or around December 23, 2014, Dr. Kenneth R. Smith performed a Physical Residual Functional

Capacity Assessment of Rice. (Tr. 704-09). Dr. Smith found that Rice could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour day, sit for about 6 hours in an 8-hour workday, and is unlimited in her ability to push and/or pull. Dr. Smith said Rice had no postural limitations, manipulative limitations, visual limitations, communicative limitations, or communicative limitations.

On or around May 4, 2015, Francisco Garriga, M.D., conducted a Physician's Assessment for her Social Security Disability Claim. (Tr. 800-01). Dr. Garriga found that Rice's ability to stand and walk and to sit were not affected by her fibromyalgia. (Tr. 801). Dr. Garriga found that Rice had no physical restrictions in reaching, handling, fingering, feeling, pushing or pulling, seeing, hearing or speaking. (Tr. 801).

## IV.   Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

9

Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed

10

because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V. Discussion

### A. Credibility

Rice argues that the ALJ failed to properly consider her credibility. In the opinion, the ALJ noted that a review of Rice's medical treatment records from 2010 through 2015 showed that Rice did not seek or obtain medical treatment for any type of physical or medical condition in 2011 or 2012. (Tr. 20). Rice complains that the ALJ failed to recognize that when Disability Determination Services (DDS) requested medical records to determine whether Rice continued to meet disability requirements in 2014, DDS only requested medical records from May 2013 through 2014; DDS did not request evidence back to the date of the initial award in 2010. (ECF No. 17 at 8). Rice claims that the ALJ's erroneous reliance on the absence of treatment to find a "lack of credibility" tainted the ALJ's evaluation of the evidence throughout the hearing decision which lead to an unsupportable RFC assessment. (ECF No. 17 at 9). Rice also complains that the ALJ reported that Rice was the primary caregiver for her elderly, disabled mother, which undermined Rice's credibility. (ECF No. 17 at 9 (citing Tr. 17, 18, 20, 22)). Rice states that the ALJ failed to recognize that Rice's mother had "a chore worker, visiting nurse, and social worker who monitored and assisted Rice's mother with her daily activities. (ECF No. 17 at 9 (citing Tr. 321); *see also* Tr. 54). Further, Rice takes issue with the ALJ finding that "none of [Plaintiff's] doctors have ever tested her mental concentration..." (ECF No. 17 at 10 (citing Tr. 22)). Rice states that this was inaccurate because on April 2, 2014, Safwat Wahba, M.D., at Psych Care Consultants, noted on her mental examination that Rice had decreased concentration. (ECF No. 17 at 10 (citing Tr. 572)). Likewise, on February 12, 2015, Melissa Fischer, N.P., at Psych Care

11

Consultants observed that Rice appeared "to have issues with maintaining her focus, [she] gets lost in the middle of a sentence." (ECF No. 17 at 10 (citing Tr. 731)).

Thus, Rice contends that the ALJ's credibility assessment was not based on substantial evidence because the ALJ "misstated and misconstrued the evidence to support her ultimate conclusion." (ECF No. 17 at 10). Rice claims that the ALJ's decision failed to properly analyze Rice's credibility because the ALJ did not recognize Rice's treatment between 2010 and June 25, 2013 and that error changed the outcome of the case. As a result, Rice maintains that the ALJ developed an unsupportable RFC assessment and the hearing decision was not supported by substantial evidence.

The Court, however, holds that the ALJ conducted a proper credibility analysis, which supported the resulting RFC assessment. The Court holds that the ALJ properly considered statements Rice made that were inconsistent with the record as a whole. (Tr. 17, 18, 20). "Subjective complaints can be discounted, however, where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Rice claimed that her fibromyalgia was so debilitating that she could only dress herself in certain types of clothing, could not sit for longer than 30 minutes at a time, could lift less than a gallon of milk, and had difficulty walking. (Tr. 56-57, 60-61, 69). These extreme limitations are inconsistent with Dr. Garriga's opinion that Plaintiff's ability to sit, stand, and walk would not be affected by her fibromyalgia. (Tr. 801). The ALJ also asserted that the treatment notes for Rice reflected that she exercised but that it had lapsed because of her busy schedule. (Tr. 611 (Rice decreased exercise because "there's too much going on"). In addition, the record reflected that Rice provided primary care for her elderly mother for a period of time, drove her son to and from school every day, walked 2 miles without

pain, performed household chores such as vacuuming, mopping, and doing laundry, helped clean out a deceased relative's house, and cleaned out her own house. (Tr. 589 (takes care of her 81 year old mother who has Alzheimer's and her two family dogs; able to prepare meals, do housework including vacuuming, mopping, and laundry; can drive go out alone and shop; pays bills and manages bank accounts; attends church); Tr. 633 (reported walking 2 miles with tingling but no pain). The Court holds that these activities are inconsistent with the degree of impairment alleged by Rice.

The Court also holds that the ALJ properly considered that Rice was, for a time, the primary caregiver for her mother. Although Rice later hired others to care for her mother, Rice does not dispute that she was able to perform these duties for a period of time. The Court holds that this type of activity is inconsistent with Rice's claimed limitations. *See* Tr. 54, 61; *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole."). Likewise, the Court notes that Rice's physicians typically noted that she had normal muscle strength, normal range of motion in her joints, and she was encouraged to engage in more exercise. (Tr. 20, 380, 383, 420, 428, 485, 543, 545, 546, 548, 552, 556, 593, 612, 613, 635, 646, 647, 656, 657, 665, 671, 676, 684, 690, 698, 746, 749, 775, 777). Her doctors rarely reported abnormal findings upon physical examination and she has not been treated on a regular basis for the spinal disorder that she had in 2010 when she was found to be disabled. (Tr. 20, 573-837). However, she has been treated for fibromyalgia. (*Id.*).

In addition, Rice's medical records indicate that medication was effective in treating her pain. (Tr. 20, 788 (noting that Rice's pain responded to low dose prednisone)). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."

13

*Davis v. Astrue*, 545 F. Supp. 2d 973, 986 (D. Neb. 2008) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). When Rice was compliant with her medication, she often reported no tender points, no muscle pain, and normal range of motion in her joints. (Tr. 20, 361, 420, 428, 485, 612, 646, 671, 676, 690, 755).

The Court also holds that the ALJ made proper conclusions regarding Rice's mental health. Rice had argued that the ALJ erred in concluding that she had not undergone tests regarding her mental concentration. Rice pointed to the mental status examinations and observations that indicated that she displayed decreased concentration. The Court holds that this does not contradict the ALJ's determination. The ALJ expressly acknowledged instances in which she was observed to have reduced concentration. (Tr. 22). The ALJ's statement, however, was that Rice's memory and concentration were never subjected to objective tests, which appears to be well-founded. (Tr. 22). The ALJ nevertheless found that Rice had "moderate" limitations in concentration, persistence, or pace, and imposed a RFC of no more than simple routine tasks with only occasional work place changes to account for Rice's limitations. (Tr. 17, 19). Therefore, the Court holds that ALJ did not err in noting that testing did not confirm Rice's allegations of severe concentration limitations. (Tr. 17, 22).

In sum, the Court holds that the ALJ did not err in the conclusion that Rice was no longer disabled based upon her lack of treatment from 2010 through June 25, 2013. The ALJ did not dispute that Rice was disabled under the regulations from 2010 through June 25, 2013. (Tr. 13) Regardless of Rice's treatment history prior to the relevant period, the medical records after June 25, 2013 reflect that Rice received relatively minimal and conservative treatment. The Court affirms the decision of the ALJ.

B. **Medical Opinion Evidence**

"[T]he ALJ must *always* give good reasons for the weight given the treating source's opinion." *Tyson v. Colvin*, 9 F. Supp. 3d 1104, 1109 (D. Neb. 2014) (citing 20 C.F.R. § 404.1527(c)(2); *see also Anderson*, 696 F.3d at 793). Pursuant to that provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 61 Fed.Reg. 34490–01, 34492 (July 2, 1996); *Wilson*, 378 F.3d at 544.

The ALJ gave some weight to portions of Dr. Garriga's report regarding Rice's ability to engage in work related activities. (Tr. 21). Because Dr. Garriga only saw Rice on two occasions, however, the ALJ refused to give Dr. Garriga's opinion significant weight. Dr. Garriga opined that Rice experienced pain that would "frequently" interfere with her ability to maintain attention and concentration. (Tr. 800). The vocational expert testified that if an individual required rest breaks in excess of the traditional rest breaks allowed in unskilled labor, the individual would not be able to maintain employment. (Tr. 77). Rice claims that her inability to maintain attention and concentration would require breaks or work stoppage during an eight (8) hour work day. Rice asserts that she would be incapable of competitive work if she were off task "frequently" according to Dr. Garriga's opinion. In addition, Rice claims that the ALJ improperly failed to give Dr. Garriga's opinion significant weight because, under the regulations, an ALJ can "give any amount of weight to any opinion in evidence after the ALJ properly considers the checklist of factors set forth in 20 CFR §404.1527(c)." (ECF No. 17 at 12). Rice notes that the frequency of treatment is only one of the factors that the ALJ must

15

assess. (ECF No. 17 at 12 (citing 20 CFR §404.1527(c)(2)(i)). Rice emphasizes that the ALJ instead gave significant weight to the opinions of medical consultants who never even saw Rice and asserts that the ALJ's legal analysis is flawed. (ECF No. 17 at 12). Therefore, Rice claims that this Court should reverse and remand the hearing decision.

The Court finds that the ALJ properly considered and evaluated the medical opinion evidence in the record. Although Dr. Garriga expressed an opinion that Rice's pain would "frequently" interfere with her ability to concentrate, Dr. Garriga stated, in that same opinion, that Rice would "be able to sustain employment." (Tr. 800). To the extent that Rice has concentration limitations, the Court holds that the ALJ accounted for these problems by limiting Rice to no more than simple, routine tasks with only occasional work place changes. (Tr. 19). Moreover, to the extent that the ALJ's opinion diverges from Dr. Garriga's opinion in other areas, the Court notes that the ALJ is "'not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007)). The ALJ took into account the opinions of Dr. Threlkeld and Dr. Smith (Tr. 585-91, 705-09), and imposed even greater limitations on Rice's RFC than required by Dr. Threlkeld's and Dr. Smith's evaluations. However, the ALJ did not impose the restrictions suggested by Rice's allegations of extreme limitations in sitting, walking, lifting, and moving because such allegations were not supported by the opinion evidence. Therefore, the Court holds that the ALJ imposed a RFC based upon the credible medical evidence in the record and denies Rice's request for reversal and remand.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 30th day of October, 2017.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE